## WELLS MILLER, A MINOR, BY WILLIAM MILLER, NEXT FRIEND, *versus* JOHN KINZIE

November 4, 1825

Charles Larned, attorney for plaintiff.
John L. Leib, attorney for defendant.

## [OPINION]
### Miller vs Kinzie— M° for N T.—

M[r] Holden, Pltfs Witness

States that he was at Chicago at the time the Treaty was held &[c]. That Wells Miller and the Witness went ashore without opposition— That he heard Gov[r] Cass say something about the Crowd and that he would send for a guard— That Wells Miller said he was no soldier— That then Kinzie struck him with his fist, and the Indians huddled around when Kinzie struck him with a stick and followed him out and gave him a Black Eye— That the witness was not more than 4 feet from Miller— That the stick was of the size of a mans thumb— that Miller was 19 or 20 years old—

Cross ex[n] Was Miller requested to leave the ground before the fracas took place? Ans[r]    He heard Gov[r] Cass say there must not be such a crowd

Witnesses for def[t]

M[r] Knaggs.— At the Treaty at Chicago, he heard Gov[r] Cass request all white persons to with-draw, which they did— Shortly after— it was observed that there was a white person who remained in the Counsel standing— That Gov[r] Cass ordered the witness to request the the person to retire  But M[r] Kinsie went and ordered him away— The young man refused, and Kinsie took him by the arm, and immediately they clinched— The witness went into the Crowd that had gathered around, and saw Battist (Alloir) have hold of the young man by the Collar, whom the witness requested not to strike— That immediately on the fracas commencing between Kinsie and Miller Batist Clinched the Latter— The witness did not see Kinsie strike Miller— Millers Language was abusive— The witness was asked if Kinzie ordered Battist to take Miller out of the Council— Answered that he did not hear him— That he did not see Battist at the commencement. Miller stood alone, all other white persons having retired—

Col  Williams— That the Gov[r] requested the citizens to retire— That he went to his Tent— That he heard a noise, and came down— saw Miller and that his face was bloody— Saw no blows— (M[r] W. further stated that he thought Miller in the wrong & that he rec[d] what he deserved)

Gov[r] Cass.  Testified, that owing to obstructions, he found it necessary to request the persons (not having any thing to do with the Treaty) to withdraw— That he requested some person to notify some Two or three persons to withdraw. Kinzie asked the person (Miller) to withdraw, and some words passed, when he saw Kinsie put his hands on Miller, when they immediately clinched—

By M[r] Knaggs— When Kinzie addressed Miller and requested him to retire, Miller replied he had as much right there as Kinzie, and that they immediately clinched—

The above is the evidence given on trial

In the charge to the jury, Judge Sibley stated to the Jury as Law, that whenever the Gov[t] vested a person with authority to do an act, the Law gave to the individual, the means, necessarily incident to the performance of such act—

That the ground on which the Treaty of Chicago was held being public property, the Commissioners by virtue of the authority vested in them, had a right to appropriate the ground, on which the Treaty was holden, exclusively to that use, and to order all persons from the spot so allotted, and in the event of refusal to obey, to make use of the necessary force, for the removal of such persons—

That the Commissioners had taken possession of the ground at Chicago and had caused to be erected a Bowery for the purpose of holding the Treaty thereon, thereby appropriating the spot of ground;— That Miller entered on the ground without invitation or permission and upon being notified to depart therefrom peremptorally refused, alledging that he had right to the ground and to remain, in opposition to the order of the Commissioners, Thereby making himself a Trespasser and wrong doer, and that any injury he may have sustained in effecting his removal, must be charged to his own unwarrantable Conduct, provided the force used was proportioned to his resistance— And in his charge he remarked further, that as the pleadings were closed on the general issue, the jury were bound to find a verdict for the Pltff, if they believed from the evidence given, that Kinzie assaulted and struck Miller— That if the Def$^t$ intended to have relied upon a Justification it was necessary that he should have pleaded it— That in the Opinion of the Judge, under the Law that governed the Case, a sufficient justification was made out by the Defendant in evidence & had such justification been pleaded That the Jury were however the constitutional Judges of the evidence as applying to the facts charged— That on a full view of the evidence and facts disclosed on the trial, it was the opinion of the Judge that nominal damages were all that the Pltff could expect, or require at their hands— Immediately after the charge The Learned Counsel for the Pltff, in an abrupt manner & and with great warmth made an address to the jury & denied the Law to be as Laid down by Judge Sibley in his charge to the Jury— Pledging his reputation as a Lawyer, that the Defendant had equally as good right and authority to possess occupy and enjoy the ground on which the Treaty was held as the Commissioners, That they had no legal authority to eject the Pltff from it, and the Defendant Kinzie could not protect himself under such orders as were given him by Govr Cass one of the Commissioners—

The Jury Disregarded the opinions and direction of the Judge, brought in their verdict for $300 damages which the def$^t$ contends are excessive and oppressive &c and moves the Court for a New Trial (and has assigned his reasons— as follows— refer to the reasons on file

That the damages are excessive—

That the def$^t$ was surprised &$^c$)

New trial asked for is resisted by the Pltffs Counsel on the ground, that the Court has not authority to grant a new trial in this Case, it being an action founded on trort— That the jury are sole judges of damages in actions of Tort and that their verdict cannot be set aside by the Court, unless the damages given are *outrageously excessive*— and such as shew manifestly misbehavior on the part of the Jurors— That damages given in the present case, do not fall within the exception to the general rule— They are not of that enormous character, that the Law requires, to authorise the Court to interfere with the verdict— In support of this point the 9th of Johnston pa 36, 48 & 50 are relied on  The Cases referred to by the Pltffs Counsel are both Cases of Libel— In those Cases, the Court refused a New trial on the ground that it did not appear to the Court that the damages were extraordinary and extravagant, or in other words, that they were Outrageous, admitting

that had it appeared to the Court that the damages were outrageous &c the Court would have had authority to set aside the verdict and grant a New trial, and that too in a Class of Cases where there were no facts or data, disclosed by the evidence, to govern the Court— The Cases Cited by the Court, in support of their dictum so far as I have examined, and on which they appear to have founded their opinion, are on Libel, Crim. Com. Malicious prosecutions, false imprisonment &c And so far as concerns those Classes of Cases, I feel no inclination to question the authority as Laid down—

But in admitting the authority as Laid down by Judge Kent, as governing the Case then before him, I do not feel my self bound by the dictum he advances, as applying to every discription of torts, without exception. It does not appear to me to embrace an action of trover— The jury in such actions must give their virdict in damages— The rule by which they are bound to assess damages, is the value of the article Converted and damages for the loss of the use thereof— These facts when proved are placed within the knowledge & power of the Court, and enable the Court to arrive at a conclusion, whether a verdict is or is not excessive in point of damages— In such a Case, should a Jury undertake to give heavy and vindictive damages, the Court would correct the finding by awarding a New Trial— And I think that the same rule may be applied to the finding in an action for assault and battery— The facts of the asst and Battery, with all the circumstances attending it must appear to the Court as well as the Jury— Whether it is a petty or common asst and Battery and attened with no disability or loss to the Pltff, or whether on the Contrary it is outrageous and attened with actual and serious loss and injury, by mayhem sickness or other like Consequences— These are facts that must be disclosed before the Court and Jury on the trial, and furnish the Court the means by which they may and ought to protect the Deft agt ruin which might follow by enforcing a verdict of a Jury, that should be given in thro, prejudice or other improper motive— Case in point. 5. T.R 257.

A Court are bound at all times to administer Justice according to the facts of the Case as disclosed by the evidence, under the Law— I am therefore of the opinion that the Court have the authority in the present Case to grant a New Trial, under a legal discretion, if upon a full view of the evidence and facts, that justice requires it—

The 1st point, to be enquired into is, have the Jury given excessive damages?

It appeared by the evidence, adduced on the trial by the Pltff that the defendant assaulted and beat the Pltff and gave the Pltff a black eye and a Bloody face— that he struck the Pltff first with his fist and afterwards with a stick of the thickness of a mans thumb— No evidence was offered to shew any very serious damages to have been experienced by the Pltff in consequence of the Battery, such as sickness, loss of health &c. Taking the Pltffs case on his own shewing it falls within the class of a Common assault and Battery— The defendants witnesses who were present at the same time and within plain view, differ in one essential point from the Pltffs evidence. Mr Knaggs testified that Kinsie went up to the pltff and ordered him away, that Pltff refused— that Kinzie then took hold of the Pltffs arm, when they immediately clinched— Mr Knaggs says he did not see Kinzie strike Miller—

Mr Knaggs from his evidence must have been looking at Kinzie from the time, he started to order Miller to retire until they clinched— He details facts that took place that he could not have known in any other way than from his own observation— And if he is to be believed, no Blows were given or exchanged, until Miller & Kinzie clinched— Gov Casses Testimony is the same as Knaggs— Kenzie spoke to Miller, put his hands on Miller and then they immediately clinched—

Thus there are Two Witnesses, who swear to facts that negative the testimony of Holden the Pltffs witness as to the Blows of Kinzie that were given before the scuffle— No witness But Holden deposed that Kinzie ever struck Miller and by his evidence the defendant struck Miller immediately after he replied to Kinzie, "I am no soldier," and before any scuffle ensued— I have made these remarks in answer to an assertion made by the Pltffs. Counsel in his argument. that there was no contradiction in the Testimony as delivered at the trial—

Holdens mode and manner of giving his testimony was not without objections— He was evidently heated, either by the effects of Liquor or passion and appeared to manifest a stronger interest in favor of the Pltff in support of his action, than his situation warranted, he being a witness—

It appeared to me at the time of the Trial, that the jury were in an error in making up their verdict and that the same was not the result of cool deliberation free from prejudice— That the jury disregarded the charge of the Judge on the Law, that governed the Case is evident, And that they were led into the error by the manner in which that law was denied by the Pltffs Counsel, in the presence & hearing of the jury after they were charged by the Court— Under a full view of the facts of Case, I am compelled to say that the damages found by the jury are excessive, and oppressive upon the defendant, and therefore that a new trial ought to be granted—